IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WILLIAM ALLEN ARNOLD, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:09-CV-151 (CDL) |
| CITY OF COLUMBUS, GEORGIA; MUSCOGEE COUNTY, GEORGIA; STATE OF GEORGIA; and UNITED STATES, | * |
| Defendants. | * |

O R D E R

The Court previously ordered Plaintiff to restate his *pro se* Complaint so that Defendants would be able to discern what he is claiming and frame a responsive pleading. *Arnold v. City of Columbus, Ga.*, No. 4:09-cv-151 (CDL), 2010 WL 1904985, at *2-*3 (M.D. Ga. May 11, 2010). Specifically, the Court ordered Plaintiff "to restate his Complaint and set forth a short and plain statement of each claim showing that he is entitled to relief." *Id.* at *2. The Court ordered Plaintiff to specify:

> (1) which cause or causes of action are asserted against each Defendant;
>
> (2) what factual allegations form the basis of each claim against each Defendant;
>
> (3) the legal theory upon which he asserts liability against each Defendant.

*Id.* at \*3. The Court notified Plaintiff that his "failure to file a properly restated Complaint . . . could result in the dismissal of Plaintiff's Complaint." *Id.*

In response to the Court's Order, Plaintiff filed a 209-page, 966-paragraph "Second Amended Original Complaint." 2d Am. Original Compl., May 28, 2010, ECF No. 28 [hereinafter Am. Compl.]. The Amended Complaint is against the Columbus Consolidated Government ("Columbus")[1] and the State of Georgia ("Georgia"). Plaintiff also added claims against "United States, A (foreign?) commercial entity" and "United States of America, A (foreign?) commercial entity" (collectively, "United States"). Presently pending before the Court are the following motions: Georgia's Motion to Dismiss or, Alternatively, Second Motion for More Definite Statement (ECF No. 31); Columbus's Second Motion to Strike and/or For a More Definite Statement and Motion to Dismiss (ECF No. 41); and the United States's Motion to Dismiss (ECF No. 44). For the reasons set forth below, Defendants' motions to dismiss are granted, and Plaintiff's Amended Complaint is dismissed.

THE ORIGINAL COMPLAINT AND THE ORDER TO RESTATE

In Plaintiff's original Complaint, Plaintiff claimed that he was stopped and arrested by a "motorcycle patrolman." 1st Am. Original

---

[1]The Columbus Consolidated Government is comprised of both Muscogee County and the City of Columbus.

2

Compl. ¶¶ 6-18, ECF No. 2 [hereinafter Compl.]. Plaintiff's original Complaint recounted the details of his arrest, detention, and the subsequent criminal proceedings. *Id.* ¶¶ 6-79. Plaintiff appeared to make claims under 42 U.S.C. § 1983 ("§ 1983") based on his arrest, detention, and prosecution. *Id.* ¶¶ 112-126 (appearing to make claim for false arrest); *id.* ¶¶ 127-132 (appearing to make claim for malicious prosecution). However, the original Complaint did not describe where the initial events giving rise to the Complaint occurred, and did not describe with particularity how each Defendant was involved in the alleged wrongs.

Plaintiff's original Complaint also contained allegations related to a "transportation scam" between Columbus and Georgia, "[c]ompelled commerce via *in terrorem* of criminal sanctions," and "[c]ompelled political/religious affiliation via *in terrorem* of criminal sanctions." Compl. ¶¶ 80, 90, 99-110, 121, 124, 132. The Court found that these allegations were vague and difficult to understand but noted that it appeared that Plaintiff may be contending that neither Columbus nor Georgia may legally require him to obtain a driver's license. *Arnold*, 2010 WL 1904985, at *1. It was not clear from the original Complaint how or if these allegations related to Plaintiff's § 1983 claims for false arrest and malicious prosecution or whether Plaintiff made any additional claims based on these allegations. In addition to the claims regarding

3

transportation, compelled commerce, and compelled affiliation, the original Complaint contained certain allegations related to the maintenance of judicial records. Compl. ¶¶ 81-83. The Court also found these allegations to be vague, and the Court could not discern how or if they were related to Plaintiff's § 1983 claims for false arrest and malicious prosecution or whether Plaintiff made any additional claims based on these allegations. *Arnold*, 2010 WL 1904985, at *1.

The original Complaint also appeared to seek a temporary restraining order and/or preliminary injunction related to "the state court proceeding." Compl. ¶¶ 84-96. It was not clear from the original Complaint what, if any, "state court proceeding" was pending. The original Complaint further sought equitable relief, requesting that Defendants "be enjoined from interfering with [his] right to travel[,] . . . from criminally violating him as a means of extortion to get him to engage in transportation in 'this state' against his own desire and discretion[, and] from criminally violating him as a means of extortion to get him to become a member of 'church of STATE OF GEORGIA.'" *Id.* ¶ 111. The precise focus of Plaintiff's request for equitable relief was unclear to the Court, but the Court concluded that it may be related to his apparent contention that Columbus and Georgia may not legally require him to obtain a driver's license. *Arnold*, 2010 WL 1904985, at *2.

The Court concluded that Plaintiff's original Complaint was a "shotgun" pleading that made it difficult to discern what claims for relief Plaintiff was making, which factual allegations were intended to support each claim for relief, and which claims related to which Defendant. *Arnold*, 2010 WL 1904985, at *2. The Court therefore ordered Plaintiff to "restate his Complaint and set forth a short and plain statement of each claim showing that he is entitled to relief." *Id.* Specifically, the Court ordered Plaintiff to specify clearly:

> (1) which cause or causes of action are asserted against each Defendant;
>
> (2) what factual allegations form the basis of each claim against each Defendant;
>
> (3) the legal theory upon which he asserts liability against each Defendant.

*Id.* at *3. The Court emphasized that Plaintiff should "explain in his restated Complaint what laws Plaintiff contends each Defendant violated, how each Defendant violated those laws, and what relief Plaintiff seeks for the alleged violations." *Id.* The Court also admonished Plaintiff "to include a concise statement specifying how the allegations regarding a 'transportation scam,' 'compelled commerce' and 'compelled political/religious affiliation' relate to his § 1983 claims and/or give rise to separate claims." *Id.* The Court also found that Plaintiff's restated Complaint should "include a concise statement explaining the basis for [Plaintiff's] claim

5

related to the maintenance of judicial records," "specify what 'state court proceeding'" he sought to have enjoined, and

> explain what acts of each Defendant he [sought] to enjoin with his request that Defendants "be enjoined from interfering with [Plaintiff's] right to travel[,] from interfering with him as a means of extortion to get him to engage in transportation in 'this state' against his own desire and discretion[, and] from criminally violating him as a means of extortion to get him to become a member of 'church of STATE OF GEORGIA.'"

*Id.* (quoting Compl. ¶ 111).

## THE AMENDED COMPLAINT

Plaintiff's Amended Complaint clarifies nothing. Plaintiff did not clarify which causes of action are asserted against each Defendant; rather, the Amended Complaint confuses matters further because Plaintiff added "United States" and "United States of America" as Defendants and defined "STATE" as *either* Georgia or the United States. Am. Compl. 17 n.3. Plaintiff also did not clarify what factual allegations form the basis of each claim against each Defendant or upon which legal theories his claims against each Defendant are based.

Plaintiff's Amended Complaint begins with a "Waiver of Objection to Debts of the United States," an "Assertion of Rights," and an "Objection to Non-judicial Decision-making."[2] Am. Compl. 12-15.

---

[2] Plaintiff objects chiefly to Local Rules 72 and 73, which provide that a United States Magistrate Judge may conduct certain proceedings and serve as a special master in certain matters. The Court notes that this action has not been referred to a Magistrate Judge in any way.

Plaintiff objects to the Court's Order for a more definite statement, arguing that the Eleventh Circuit Court of Appeals's "pleading policy" is "outrageous" and asking "how on earth" Defendants could "possibly say that they are *not* on Notice" of Plaintiff's claims, given that Plaintiff pled the facts "in rather exquisite detail." *Id.* at 15-16. Plaintiff also asserts that he "cannot possibly have been more clear by the presentation of these facts in his First Amended Complaint that he's charging STATE OF GEORGIA and CITY/COUNTY OF COLUMBUS, directly and as agents for STATE, commercially for their criminal violations of his rights." *Id.* at 17 (footnote omitted). Plaintiff also asserts that there was not "one single, solitary pleading problem with the facts" but notes that the Court's Order requires him "to expound even more upon the operational shenanigans of 'transportation' scam." *Id.* at 18.

Plaintiff's Amended Complaint continues with a "BRIEF on the Fundamental Legal Theory(ies)" of the Complaint; it is not clear whether Plaintiff intends to assert any claims in this section. In his "brief," Plaintiff asserts that the "choice of law" analysis boils down to the "Law of the Land" or "Law of the Sea," that the choice of law depends on the "money," and that the government is perpetrating a "funny money" scam. Am. Compl. 19-25. He argues that the purpose of a "license" is to engage in commerce and cites *Griswold v. Connecticut*, 381 U.S. 479 (1965) for the proposition that

a "commercial family" cannot be compelled "to engage in . . . commerce, i.e., to make babies." Am. Compl. 25-26. He contends that a driver's license is an "ID card for membership in 'church of STATE OF \_\_\_\_\_'" and he asserts that church membership cannot be compelled. *Id.* at 26-28. Plaintiff argues that when "'funny money' replaced Money, the States vanished" and were replaced with "commercial entities called STATEs," and he asserts that Plaintiff "never agreed to the choice of law of the 'place' called 'this state.'" *Id.* at 28-30. Plaintiff cites various cases that he asserts relate to the right to be free from unreasonable search and seizure, the right to freedom of association, the right to contract, the right to engage in commerce, the right against cruel and unusual punishment, the right to due process, and the right to a fair trial. *Id.* at 30-32. He defines "transportation" as limited to the commercial context and argues that people "don't *need* a 'license,' insurance, etc., i.e., that STATE has no way to control their 'traveling,' but only their commercial acts, engaged in the 'federal zone' called 'this state,' involving 'transportation.'" *Id.* at 33-37. He cites various statutes regarding criminal liability for another's acts. *Id.* at 37-38. He argues that "STATE . . . acted commercially" with regard to Plaintiff and has therefore waived immunity and contends that, "[r]egarding all 'transportation' matters, STATE is a private party to a private matter, which, if

8

agreement exists, sounds in trust." *Id.* at 39-40. He states that the United States is included as a party because "'state' law enforcement personnel have been 'federalized,'" and he argues that "should it be that STATE's blatant commercial conduct in this sort of purely commercial case is NOT sufficient to constitute waiver [of sovereign immunity], then it follows that" United States is a properly liable party. *Id.* at 40-41. Finally, Plaintiff argues that "the Nazi-communo-fascist enforcement . . . compels shutting down the [transportation] scam in its entirety." *Id.* at 41.

Following his "brief," Plaintiff repeats the factual allegations contained in his original Complaint regarding his arrest, detention, and the subsequent judicial proceedings. Am. Compl. 42-56 ¶¶ 6-79. Specifically, Plaintiff alleges that a motorcycle patrolman stopped him for having an expired tag on his truck. *Id.* at 42-44 ¶¶ 6-18. Plaintiff also alleges that patrolmen arrested him and took him to jail, where Plaintiff was placed on suicide watch, was "pestered" and "threatened" by officers, and was detained because he would not sign some papers. *Id.* at 44-50 ¶¶ 19-61. Finally, Plaintiff asserts that he did not receive a proper Accusation or Complaint and that he had a difficult time obtaining a copy of certain judicial records

because, according to Plaintiff, those records are maintained by the prosecutor.[3]  *Id.* at 50-55 ¶¶ 62-79.

Plaintiff contends that his arrest, detention, and prosecution were unauthorized because "STATE has no standing to apply/enforce its authority to regulate 'transportation' on or against [Plaintiff], since [Plaintiff] is not in the transportation business" and was "not an 'operator' or a 'driver,'" but was "at all times merely a 'traveler,' and STATE cannot compel commerce."  *Id.* at 55 ¶ 80. Plaintiff contends that "transportation" means "the removing of people and/or property from here to there for profit or hire under the choice of law of the 'place' called 'this state.'"  *Id.* at 33; *see also id.* at 207 ¶ 959 (noting that "'transportation' is nowhere defined in the Ga. Code" and asking, "What does it mean?").

In Counts 1-8 of his Amended Complaint, Plaintiff claims that Defendants "criminally" violated several of his rights[4] and he argues

---

[3]Plaintiff requests a stay of the state court proceeding, asserting that it is a "non-case" that is "*civil* in nature, not 'criminal.'"  Am. Compl. at 57 ¶¶ 84-85.  Plaintiff's stay request appears to be based on his contention, discussed in more detail below, that a mere "traveler" is not required to have a driver's license to "travel" in a truck and that the government may not compel a person to get a driver's license.  *Id.* at 57-60 ¶¶ 84-97.

[4]It is not clear from the Amended Complaint whether Plaintiff intends these claims to be § 1983 claims for alleged violations of his civil rights or whether Plaintiff is attempting to prosecute Defendants on criminal charges.  The Court notes, however, that the duty to "prosecute for all offenses against the United States"—including criminal violation of civil rights under 18 U.S.C. §§ 241-242—rests with each U.S. attorney. 28 U.S.C. § 547.

that the offenses for which he was allegedly arrested—use of a license plate to conceal identity of vehicle,[5] improperly transferred license plate,[6] switching or removing a tag,[7] operating a vehicle without a tag,[8] driving without a license,[9] and operating a motor vehicle without effective insurance[10]—required that Plaintiff be engaged in "transportation" and not just in "traveling." *Id.* at 62-82 ¶¶ 98-237. Plaintiff argues that if he was not engaged in "transportation," then there was no "vehicle" and thus no "motor vehicle." *E.g., id.* at 62 ¶¶ 99-102. In Counts 9-16, Plaintiff

---

[5] Under O.C.G.A. § 40-2-5(a)(4), it is unlawful for a person to "operate a motor vehicle bearing a license plate which was improperly removed or transferred from another vehicle." Plaintiff contends that this statute "fails to define an offense." Am. Compl. 192-193 ¶¶ 951-952.

[6] Under O.C.G.A. § 40-2-6, it is unlawful for a person to "knowingly operate a vehicle bearing a license plate issued for another vehicle and not properly transferred as provided by law."

[7] Under O.C.G.A. § 40-2-7, it is unlawful for a person to remove a license plate from a vehicle or to affix "to a vehicle a license plate not authorized by law for use on it" with the "intent to conceal or misrepresent the identity of the vehicle or its owner." Plaintiff challenges this statute, contending that the term "owner" is vague. Am. Compl. 193 ¶ 953.

[8] Under O.C.G.A. § 40-2-8, it is unlawful for a person to operate a vehicle without a valid license plate. Plaintiff challenges this statute, contending that it is "outrageous" to punish an operator for a problem created by the owner. Am. Compl. 193-202 ¶¶ 954-956.

[9] Under O.C.G.A. § 40-5-121, it is unlawful for a person to drive a motor vehicle on a public highway without a driver's license.

[10] Under O.C.G.A. § 40-6-10(b), it is unlawful for a person to operate a motor vehicle without effective insurance. Plaintiff contends that this statute is overbroad because it applies to both "travelers" and those engaged in transportation. Am. Compl. 202-206 ¶¶ 957-958.

11

contends that, for the same reasons related to the transportation-traveling distinction, his arrest, detention, and prosecution constitute "acts of treason against him."[11] *Id.* at 83-109 ¶¶ 238-411. Plaintiff also relies on the transportation-traveler distinction in Counts 17-45, where he contends that his arrest amounts to a criminal violation of certain rights,[12] including the "right to contract," *id.* at 110-130 ¶¶ 412-551, the "right to engage in commerce, or not," *id.* at 131-151 ¶¶ 552-691, the "right to associate, or not," *id.* at 151-172 ¶¶ 692-831, the "right to be free from unreasonable seizure," *id.* at 172-174 ¶¶ 832-848, the "right to be free from unreasonable search," *id.* at 175-177 ¶¶ 849-868, the "right to be free from unreasonable treatment in detention," *id.* at 178-180 ¶¶ 869-885, the right to due process, *id.* at 180-182 ¶¶ 886-899, the "right to fair trial," *id.* at 182-184 ¶¶ 900-914, and the right to be free of compelled "exercise of privilege," "commerce," and "political/religious affiliation" "via *in terrorem* of criminal sanctions," *id.* at 184-188 ¶¶ 915-932. Plaintiff also bases his § 1983 failure to train and malicious prosecution claims on the

---

[11]In support of his treason claims, Plaintiff cites 18 U.S.C. § 2381, which prohibits treason against the *United States*.

[12]Again, it is not clear from the Amended Complaint whether Plaintiff intends these claims to be § 1983 claims for alleged violations of his civil rights or whether Plaintiff is attempting to prosecute Defendants on criminal charges. As discussed above, the duty to "prosecute for all offenses against the United States"—including criminal violation of civil rights under 18 U.S.C. §§ 241-242—rests with each U.S. attorney. 28 U.S.C. § 547.

12

traveler-transportation distinction. *Id.* at 189-191 ¶¶ 940-950. Finally, Plaintiff asks the Court to enjoin Defendants from interfering with his right to travel, "from criminally violating him as a means of extortion to get him to engage in transportation in 'this state' against his own desire and discretion," and "from criminally violating him as a means of extortion to get him to become a member of 'church of STATE OF GEORGIA." Am. Compl. 207 ¶ 961.

DISCUSSION

Defendants ask the Court to dismiss Plaintiff's Amended Complaint for failure to comply with the Court's Order requiring Plaintiff to provide a more definite statement of his claims.[13] Under Federal Rule of Civil Procedure 12(e), "[i]f the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." And, under Federal Rule of Civil Procedure 41(b), a court may dismiss an action because a plaintiff failed to comply with the Federal Rules of Civil Procedure or a court order. *See, e.g., Pelletier v. Zweifel*,

---

[13]The United States bases its motion to dismiss primarily on Plaintiff's failure to comply with certain requirements of the Federal Tort Claims Act ("FTCA"), Pub. L. No. 79-601, §§ 401-424, 60 Stat. 812, 842-847 (1946) (codified as amended in scattered sections of 28 U.S.C.). The United States also contends that certain of Plaintiff's claims are not actionable under the FCTA. The Court need not reach these issues because, as discussed in more detail below, the Court concludes that dismissal is warranted on other grounds.

13

921 F.2d 1465, 1522 n.103 (11th Cir. 1991) (noting that a court could dismiss a complaint if a plaintiff refuses to comply with a court's directive to restate his complaint in conformity with Federal Rule of Civil Procedure 8). In *Giles v. Wal-Mart Distribution Center*, 359 F. App'x 91, 93 (11th Cir. 2009) (per curiam), for example, the Eleventh Circuit affirmed dismissal of a *pro se* plaintiff's complaint when the plaintiff did not comply with the district court's order to file an amended complaint that complied with Federal Rules of Civil Procedure 8 and 10, "despite guidance from the district court on how to cure the deficiencies in his complaint and a clear warning that noncompliance would be cause for dismissal."

Here, as in *Giles*, the Court ordered Plaintiff to comply with Federal Rule of Civil Procedure 8 and provide a "short and plain statement of each claim showing that he is entitled to relief." *Arnold*, 2010 WL 1904985, at *2. The Court gave Plaintiff specific guidance on how to cure the deficiencies in his original Complaint, and the Court warned Plaintiff that failure to comply with the Order could result in dismissal of his Complaint. *Arnold*, 2010 WL 1904985, at *3. Plaintiff did not cure the deficiencies; instead, he made his claims even more difficult to discern. Moreover, Plaintiff made it clear that it would be futile for the Court to order him to restate his Complaint once again. The Court already ordered Plaintiff to set forth a short and plain statement of each claim showing that he is

14

entitled to relief; instead of complying with that Order, Plaintiff filed a 209-page Amended Complaint that does not elucidate his claims in the slightest. Moreover, Plaintiff suggests that to be "more definite" if ordered to restate his Complaint again, he would have to add at least four additional defendants and "at least another 100 pages" to his Complaint. Pl.'s Resp. to Columbus's Mot. to Strike 5, ECF No. 43. Plaintiff also predicts that as the case progresses, he will "be able to name, personally, the entire chain of command from both Atlanta and Washington straight to Columbus" and that the Complaint could "compete[] with Clavell's *Shogun* in length." *Id.* Because Plaintiff failed to comply with the Court's Order to cure the deficiencies in his original Complaint—and because ordering Plaintiff to restate his Complaint again would do no good—the Court finds that dismissal of Plaintiff's action is warranted.

The Court notes that many, if not all, of Plaintiff's claims would also likely fail on the merits. Even if the Court were to accept all the allegations in Plaintiff's Amended Complaint as true and construe his claims as § 1983 claims (rather than treason claims and attempted prosecution of criminal charges), Plaintiff's Amended Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though it is not

15

entirely clear, the heart of Plaintiff's claims appears to be his contention that "transportation" is limited to a commercial context, is different than mere "travel," and cannot be presumed. Am. Compl. 34-35. Thus, Plaintiff argues, Plaintiff's arrest—and everything that happened after it—was unlawful because a police officer cannot conduct a *Terry* stop unless the officer has a reasonable articulable suspicion that a "transportation" violation occurred, rather than mere "travel." *Id.* at 35; *id.* at 39 (alleging that there was "no 'transportation' going on in this matter"); *see Terry v. Ohio*, 392 U.S. 1, 27-31 (1968) (holding that an officer may stop, briefly detain a person, and conduct a limited search of a person to investigate a reasonable suspicion that the person is involved in criminal activity, even if probable cause to arrest does not exist).

Plaintiff alleges that he was arrested for a variety of offenses involving "operating" or "driving" a "vehicle" or "motor vehicle." Am. Compl. 62-82 ¶¶ 98-237. Under Georgia's motor vehicle and traffic title, the term driver "means every person who drives or is in actual physical control of a vehicle." O.C.G.A. § 40-1-1(14). "'Operator' means any person who drives or is in actual physical control of a motor vehicle." O.C.G.A. § 40-1-1(38). The term "vehicle" means "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks." O.C.G.A.

16

§ 40-1-1(75). The term "motor vehicle" means "every vehicle which is self-propelled other than an electric personal assistive mobility device." O.C.G.A. § 40-1-1(33). Plaintiff argues that if he was not engaged in "transportation," then there was no "vehicle" or "motor vehicle," and he cannot be considered an "operator" or "driver" under Georgia law. Am. Compl. 62 ¶¶ 99-102.

The terms "transport" and "transportation" are not defined for purposes of the motor vehicle title or the chapter on registration and licensing of motor vehicles. *See* O.C.G.A. §§ 40-1-1, 40-2-1. Again, Plaintiff urges the Court to adopt the following definition of "transportation": "the removing of people and/or property from here to there for profit or hire under the choice of law of the 'place' called 'this state.'" Am. Compl. 33; *see also id.* at 207 ¶ 959 (noting that "'transportation' is nowhere defined in the Ga. Code" and asking, "What does it mean?"). The Court must, however, look to the ordinary meaning of the terms "transport" and "transportation." *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222-23 (11th Cir. 2001) (noting that statutory construction must start with the ordinary meaning of the statute and noting that courts often turn to dictionary definitions for guidance); *Delta Airlines, Inc. v. Townsend*, 279 Ga. 511, 512-13, 614 S.E.2d 745, 747-48 (2005) (same). "Transport" means "to transfer or convey from one place to another." http://www.merriam-webster.com/dictionary/transport (last visited

17

Sept. 22, 2010). "Transportation" means "an act, process, or instance of transporting or being transported." http://www.merriam-webster.com/dictionary/transportation (last visited Sept. 22, 2010. Thus, "transport" or "transportation" means nothing more than "the removing of people and/or property from here to there." Neither the dictionary nor the Georgia statutes suggest that the terms also require that the "removing" be done "for profit or hire under the choice of law of the 'place' called 'this state.'" For these reasons, the Court rejects Plaintiff's arguments that he was not engaged in "transportation," that his truck was not a "vehicle" or "motor vehicle," and that he cannot be considered an "operator" or "driver."

Plaintiff does not allege that the motorcycle patrolman did not have a reasonable articulable suspicion that the truck in which Plaintiff was stopped had an expired tag. Plaintiff maintains, instead, that "[t]he only time a 'tag' is relevant is when there's 'transportation' at issue, thus a 'vehicle[.]'" Pl.'s Resp. to United States's Mot. to Dismiss 9, ECF No. 45. As discussed above, the plain language of the Georgia statutes does not support Plaintiff's theory, and Plaintiff's Amended Complaint thus contains no allegation that the motorcycle patrolman did not have a reasonable articulable suspicion to stop Plaintiff. Without such an allegation, the Amended Complaint does not state a claim for relief that is

plausible on its face. For these reasons, the Court concludes that even if dismissal were not warranted based on Plaintiff's failure to comply with the Court's Order for a more definite statement, dismissal would be warranted under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff failed to comply with the Court's Order to file a properly restated Complaint. Defendants' motions to dismiss are therefore granted, and Plaintiff's Amended Complaint is dismissed.

IT IS SO ORDERED, this 29th day of September, 2010.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE